855 P.2d 40

**Marlene Lorraine IRELAND, Plaintiff–Appellant, Cross–Respondent,**

v.

**Milton Harold IRELAND, Defendant–Respondent, Cross–Appellant.**

No. 19540.

Supreme Court of Idaho,
Boise, January 1993 Term.

June 9, 1993.

Raymond W. Setzke, Boise, for appellant.

Allen H. Browning, Boise, for respondent.

TROUT, Justice.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

This is an action for modification of child support payments brought by Marlene Ireland (Marlene) against Milton Ireland (Milton). Marlene and Milton were divorced in 1980 and Marlene was awarded custody of their three children: Daniel, born October 20, 1972; Christina, born February 4, 1974; and Robin, born April 29, 1979. Under the original decree, Milton was to pay $83.33 per child per month in child support. In September of 1985 the child support pay-

ments were increased to $150.00 per child per month. On March 7, 1989, Marlene filed a motion for an order to show cause why the child support payments should not be increased to $975.00 per month. The trial court thereafter held hearings relating to child custody, child support, emancipation and attorney fees on four separate days spanning a period from December, 1989, until March, 1990. This was necessitated by the activities of the children and parents, particularly Marlene, in changing their respective opinions about where the children ought to live. The court entered a final order in July, 1990.

At the time the motion for modification was filed in March, 1989, Daniel Ireland (Daniel) was working full-time and attending high school at night. Daniel lived with Marlene until September, 1989, when he moved in with Marlene's boyfriend and paid $100 per month in rent. He lived with Marlene again for a short time in December, until she filed a "beyond-the-control" petition against him in juvenile court and he was placed in a shelter care facility. He ultimately went to live with his paternal grandparents in January of 1990.

In August 1989, Christina Ireland (Christina) moved to Utah to live with Milton. On December 28, the trial court granted Milton temporary custody of Christina, effective as of September, 1989. In February, 1990, without obtaining the approval of the trial court or informing Milton, Marlene brought Christina back from Utah. When Christina disobeyed the court's order to return to Utah, the court reluctantly placed Christina back in Marlene's custody effective March 9, 1990.

Since the time of the divorce, Marlene held a number of temporary and part-time jobs. As of 1989, she was within two semesters of an associate degree in drafting and possessed an inactive real estate license. In 1988 and 1989, Marlene did some work as an apprentice drafter, earning as much as $7.00 per hour. A vocational evaluator interviewed Marlene to assess her earning potential and testified that Marlene had the ability to earn $8.75 per hour as an apprentice drafter.

In its final order of July, 1990, the trial court found that Marlene had a potential income of $1,400.00 per month and that she was underemployed. The court also found that Daniel had been emancipated since the filing of Marlene's motion in March, 1989. The court then held that there had been no substantial and material change in circumstances as of the time Marlene filed her motion, although there was a material and permanent change as of March, 1990, when Christina returned to her mother's home.

The trial court awarded Milton attorney fees finding that Milton was the prevailing party and that Marlene had frivolously filed her motion to increase child support. In support of the award of attorney fees, the court noted that Marlene had rejected Milton's offer of judgment under I.R.C.P. 68. The court ordered Milton's attorney fees paid through an offset against his child support payments.

Finally, the court increased the child support payments beginning in March, 1990, and then reduced them to reflect a finding that Milton's income was reduced in June, 1990. This reduction was based on a letter sent by Milton after the trial which indicated that Milton's income had been reduced by eighteen percent.

On appeal, the district judge found that Milton was not required to file a separate motion under I.C. § 32–709 in order to claim setoffs against his child support obligation. The district judge affirmed the trial court's finding that Daniel was emancipated and that Marlene was underemployed. The district judge also affirmed the trial court's findings concerning the change in circumstances. However, the district judge reversed the trial court's award of attorney fees to Milton and found that there was not substantial and competent evidence to support the finding that Milton's income had been reduced. Marlene appealed to this Court and Milton cross-appealed on the issues of attorney fees and evidence of income reduction.

## II.

### STANDARD OF REVIEW

This Court reviews the decision of a magistrate judge independently of a dis-

trict judge sitting in an appellate capacity, but with due regard to the district judge's ruling. *McNelis v. McNelis*, 119 Idaho 349, 351, 806 P.2d 442, 444 (1991). We will uphold the magistrate's findings of fact if supported by substantial and competent evidence. *Shurtliff v. Shurtliff*, 112 Idaho 1031, 1033, 739 P.2d 330, 332 (1987).

## III.

### SUBSTANTIAL AND COMPETENT EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THAT DANIEL WAS AN EMANCIPATED MINOR

■ Marlene argues that the trial court erred in finding that Daniel was an emancipated minor on March 9, 1989, because he was only sixteen years old at that time. We disagree.

Substantial and competent evidence supports the trial court's finding of emancipation. In addressing the issue of emancipation, the Court has indicated that the age of the child is not the controlling factor. *Embree v. Embree*, 85 Idaho 443, 448, 380 P.2d 216, 219 (1963). Economic self-sufficiency resulting from earnings is a factor which a trial court may properly consider in relieving a parent from child support obligations. *Id.* at 449, 380 P.2d at 220. In *Embree*, the minor child was employed six hours per day, five days per week, while attending high school. The minor had purchased and paid for the upkeep of an automobile and was sustaining himself through his employment. Under these facts, the Court found that the child was emancipated. *Id.* at 449, 380 P.2d at 220.

Daniel's circumstances were very similar to that of the emancipated minor in *Embree*. In 1989, Daniel was working full-time while attending high school at night. He bought a truck and paid for all of its operating costs including insurance. In addition, Daniel paid for his groceries from July, 1988, to September, 1989, and even loaned his mother money. During this time, Daniel did not receive support from either parent and neither parent claimed him as a dependent on their 1988 tax returns. Daniel was without parental supervision in his activities and relied on Marlene only for a place to sleep. All these facts indicate that Daniel was economically self-sufficient. Therefore, although we are concerned about the finding of emancipation at Daniel's age, the trial court's conclusion on the issue of emancipation is supported by substantial and competent evidence.

## IV.

### SUBSTANTIAL AND COMPETENT EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THAT MARLENE WAS UNDEREMPLOYED

■ Marlene argues that the trial court incorrectly interpreted the "potential income" section of the Idaho Child Support Guidelines by relying on testimony about Marlene's future income potential rather than her work history. In determining the potential income of a parent, the trial court should consider the "employment potential and probable earnings level based on the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community." I.C.S.G. § 6(b)(1) (1989). Under these guidelines it is clear that "potential" income is not limited strictly to the amount a parent has earned in the past. The calculation includes all the factors listed in section 6(b)(1) of the I.C.S.G.

At the hearing, Marlene testified that she had worked sporadically as an apprentice drafter in the past and earned as much as $7.00 per hour. John Belville testified that he met with Marlene before trial and learned about her work history and job qualifications. As a "vocational evaluator," Belville stated that he was familiar with job opportunities and earnings levels in the Boise area. Belville then testified that $8.75 per hour ($1,400.00 per month) was an average wage for an apprentice drafter. On these facts, Belville testified that Marlene had the ability to earn $1,400.00 per month based on her current qualifications if she worked hard and stayed in one job. Accordingly, we find that there was substantial and competent evidence to support the trial court's conclu-

sion that Marlene's potential income was $1,400.00 and that she was underemployed.

### V.

### THERE WAS NOT A SUBSTANTIAL AND MATERIAL CHANGE IN CIRCUMSTANCES SHOWN AT THE TIME MARLENE FILED HER MOTION TO MODIFY CHILD SUPPORT

 A decree with child support provisions may be modified "only upon a showing of a substantial and material change of circumstances." I.C. § 32–709. Modification of child support on the ground of material change in circumstances is within the sound discretion of the trial court and will not be altered on appeal unless there is a manifest abuse of discretion. *Gordon v. Gordon,* 118 Idaho 804, 805, 800 P.2d 1018, 1019 (1990), *citing Embree,* 85 Idaho at 450–51, 380 P.2d at 221. Where the findings of the trial court are supported by substantial, competent evidence they will not be disturbed on appeal. *See Jones v. Jones,* 117 Idaho 621, 626, 790 P.2d 914, 919 (1990).

In her motion of March, 1989, Marlene argued that the increased cost of raising teenaged children amounted to a substantial and material change of circumstances. Marlene did not present any substantial evidence to show such an increased cost; she merely testified that she needed more money to support her children. In fact, the evidence at the hearings indicated that her expenses should have been less in 1989 as a result of Daniel's emancipation. The trial court found that Marlene's difficult financial situation was caused by her own mismanagement and underemployment. Therefore, as of March 7, 1989, the trial court found no showing by Marlene of a substantial and material change in circumstances.

The trial court later concluded that there was a substantial, material and permanent change of circumstances as of March, 1990, when Christina was living with Marlene again and Daniel was deemed emancipated. It was upon this basis that the trial court ultimately ordered the child support award modified in accordance with the I.C.S.G. We have reviewed the record and find there was substantial and competent evidence to support the trial court's findings concerning the change in circumstances and when that change occurred.

It is important to point out that even though the trial court found that Daniel was emancipated as of March, 1989, it did not find that to be a material and substantial change in circumstances. Particularly in a case like this where child support is ordered to be paid at a certain amount *per child* per month, the obligor is required to pay support for children in the obligee's custody. If a child is no longer in the obligee's custody through death, attaining the age of majority or emancipation, there is no obligation to pay support. That does not require a modification of the decree; rather it is simply a recognition that there is not a child in the household for whom support is to be paid.

While under certain circumstances the emancipation of a child may be a material change in circumstances, that is not always the case. *See, e.g., Embree,* 85 Idaho 443, 380 P.2d 216 (1963); *Howard v. Mecham,* 117 Idaho 542, 789 P.2d 538 (Ct.App.1990). We agree with the findings of the trial court on this issue.

### VI.

### MILTON WAS NOT REQUIRED TO FILE A SPECIFIC MOTION TO CLAIM SETOFFS UNDER I.C. § 32–709

 In response to Marlene's motion to show cause under I.C. § 32–709, Milton filed notice with Marlene and the court asking for setoffs and raising the issue of emancipation of a minor. Milton was not required to file a specific motion for modification under Section 32–709 in order to raise these issues. Section 32–709 merely states that support may be modified "only as to installments accruing subsequent to the motion for modification and only upon a showing of a substantial and material change of circumstances." This section in-

dicates that a motion must be filed before a court can modify child support payments. Once such a motion is filed, determining whether the decree should be modified is a two-step process. First, there must be a finding of material and substantial change; and second, the court must determine the appropriate amount of support, considering in particular those factors set forth in I.C. § 32–706. *Howard,* 117 Idaho at 543, 789 P.2d at 539. In weighing those factors, the trial court should consider all relevant evidence presented by both parties at the hearing.

In this case, Marlene filed the motion for modification and Milton notified the trial court and Marlene of his intention to argue that Daniel was emancipated and to assert certain setoffs. Marlene clearly had notice of Milton's intention to claim setoffs and emancipation. We find the trial court properly considered all the evidence that was before it, including setoffs and the issue of emancipation.

## VII.

### MARLENE WAS NOT ENTITLED TO ATTORNEY FEES AT TRIAL

■ The award of attorney fees in a divorce action is left to the discretion of the trial court. *Shurtliff,* 112 Idaho at 1035, 739 P.2d at 334. Under I.C. § 32–704, the court may consider the financial resources of both parties and the factors in I.C. § 32–705 to determine whether a party is entitled to attorney fees. *Id.* "Such an award is not appropriate where a party has the financial resources necessary to prosecute or defend the action." *Golder v. Golder,* 110 Idaho 57, 61–62, 714 P.2d 26, 30–31 (1986). Before awarding attorney fees, the trial court must make specific findings on the factors listed in Section 32–705. *Jones v. Jones,* 117 Idaho at 626, 790 P.2d at 919. The factors in Section 32–705 include the ability of the dependent spouse to support his or her self through employment and the ability of the other spouse to make support payments.

In the present case, the trial court considered the appropriate factors and found that Marlene was able to support herself through employment and she was underemployed. As we stated in Section IV of this opinion, there was substantial and competent evidence to support the trial court's finding that Marlene was underemployed. The trial court's finding that Milton did not have the ability to pay Marlene's attorney fees because he was supporting another family and would be paying increased child support was supported by the evidence. Under these facts, the trial court did not abuse its discretion by refusing to award attorney fees to Marlene.

## VIII.

### THE TRIAL COURT'S FINDING THAT MILTON'S INCOME HAD BEEN REDUCED WAS NOT SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

■ On cross appeal, Milton argued that he was entitled to a reduction in child support payments based on a pay cut he received in June of 1990. The trial court granted this reduction and the district judge reversed. We agree with the district judge that the trial court's ruling was in error.

Milton's reduction in pay must be proven by substantial and competent evidence. The only evidence of Milton's pay cut was his testimony that he knew he was either going to be fired or would suffer an eighteen percent pay reduction some time in the future. At the time he testified, he did not know which it would be. Marlene's counsel properly objected to Milton's testimony as speculative but the trial court overruled the objection.

After trial, Milton wrote a letter to the trial judge indicating that his pay had in fact been reduced by eighteen percent. There was, however, no substantial, competent evidence presented at trial to support a finding that Milton's pay was reduced in June, 1990. The parties did not stipulate that Milton's letter could be considered, nor was it ever admitted as evidence at a hearing. Accordingly, the letter is not compe-

tent evidence and cannot be used to support Milton's claim.

The trial court held that Marlene could either accept the reduction based upon Milton's letter, or could challenge it; but if the reduction were upheld, she would have to pay Milton's costs and fees for pursuing a frivolous motion. Since Milton had the burden of proving a reduction in income, it was improper for the trial court to shift this burden to Marlene by forcing her to choose between accepting Milton's assertions as true or paying for a hearing on the issue. Thus we agree with the district judge that the child support payments should not have been reduced.

## IX.

### THE TRIAL COURT ERRED IN AWARDING PAYMENT OF MILTON'S ATTORNEY FEES THROUGH AN OFFSET OF CHILD SUPPORT

The trial court found that Milton was the prevailing party in significant part and awarded him his attorney fees under I.C. § 12–121 and I.R.C.P. 54(e)(1). In support of this finding, the court cited Milton's offer of judgment under I.R.C.P. 68. The court then offset the amount of Milton's fees against his child support obligation.

First, we consider whether the trial court abused its discretion in awarding attorney fees. The court should not have used Rule 68 to support an award of attorney fees. Rule 68 "is intended to protect a defendant against a plaintiff's claim for costs where the defendant has made a reasonable offer of judgment and where the verdict recovered by the plaintiff is less favorable than the offer." *Vulk v. Haley*, 112 Idaho 855, 859, 736 P.2d 1309, 1313 (1987). Rule 68 is not intended to provide for an award of attorney fees. *Id.* This rule applies only to judgments obtained by plaintiffs, putting a special burden on prevailing plaintiffs to whom a settlement offer is made to show that they are entitled to costs. *Jones*

*v. Berezay*, 120 Idaho 332, 334, 815 P.2d 1072, 1074 (1991).[1]

The decision to award attorney fees under I.C. § 12–121 and I.R.C.P. 54(e)(1) is within the sound discretion of the trial court. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982). This Court considers the following factors in determining whether a trial court abused its discretion:

(1) [W]hether the trial court correctly perceived the issue as one of discretion;

(2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to it; and

(3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). In the present case, the trial court was aware of its discretionary power and acted within the boundaries of its discretion. In finding that Marlene's motion was frivolous, the court reasoned that Marlene had not shown any change of circumstances existed when she filed her motion. Accordingly, we cannot say that the court abused its discretion in awarding Milton his attorney fees.

We also consider whether the trial court erred in awarding attorney fees through an offset of child support payments. Child support payments are intended for the benefit of the children. *Alber v. Alber*, 93 Idaho 755, 758, 472 P.2d 321, 324 (1970). The primary criterion for judgment is the welfare of the children not the conduct of the parent. *Id.* In the present case, the trial court concluded that it was "equitable to offset this sum [awarded of attorney fees] against the child support obligations established herein, effective August, 1990." The court did not discuss the welfare of the children before offsetting Milton's attorney fees against the child support payments. The record shows Marlene had two children in need of support and could not provide for them on her own. In these circumstances, regardless of Marlene's conduct, it

---

1. Given the basis for our holding here, we will leave for another case the question of whether

Rule 68 even applies in divorce cases.

was not proper for the trial court to reduce child support payments in order to satisfy an award of attorney fees.

## X.

### MILTON IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL

Milton requests attorney fees on appeal. There are a number of issues presented by both parties on appeal which present legitimate issues of law. Accordingly, an award of attorney fees on appeal is not appropriate.

## XI.

### CONCLUSION

The decision of the trial court is affirmed in part and reversed in part. This case is remanded to the trial court for entry of a child support award in accordance with this opinion. The parties are to bear their own costs.

McDEVITT, C.J., BISTLINE and JOHNSON, JJ., and REINHARDT, District Judge pro tem., concur.