873 P.2d 921

George Michael **PIEPER**, Plaintiff–Respondent,

v.

JoBeth **PIEPER**, n/k/a JoBeth Gelinskey, Defendant–Appellant.

No. 20291.

Court of Appeals of Idaho

April 29, 1994.

McDermott, Zollinger, Olley & Webber, Pocatello, for defendant-appellant. Patricia L. McDermott, argued.

Whittier, McDougall, Souza, Murray & Clark, Chartered, Pocatello, for plaintiff-respondent. John Souza, argued.

LANSING, Judge.

George Michael Pieper (Michael) and Jo-Beth Gelinskey, f/k/a JoBeth Pieper, (Jo-Beth) were married in 1980 and divorced in 1986. The divorce decree granted joint legal and physical custody of the parties' two children, Michael Bryan Pieper[1] and Amber Dawn Pieper, with the children to spend six months per year with each parent. In 1988 when the children started school, the decree was modified upon stipulation to place primary physical custody with the children's father during the school year. JoBeth retained physical custody of the children during the summer with visitation during the school year on one night per week for dinner and on alternating weekends.

In June 1990, Michael refused to allow Amber to go to JoBeth for her summer visitation, reportedly on the recommendation of Amber's therapist. JoBeth filed a motion

---

1. The son is hereafter referred to as "Michael Bryan" to distinguish between the son and the father, Michael.

to hold Michael in contempt, and shortly thereafter Michael relinquished Amber to Jo-Beth's custody for the summer.

On June 15, 1990, JoBeth requested that the decree be modified to give her primary physical custody during the school year. After a protracted trial, the magistrate concluded that the best interests of the children would be served by reversing the custody arrangement, granting primary physical custody to JoBeth and giving summer custody and other visitation rights to Michael. The custody terms of the decree were modified accordingly, and Michael was ordered to pay child support. Michael appealed. The district court, exercising appellate review, reversed the magistrate and reinstated the terms of the 1988 stipulation regarding custody. JoBeth has appealed to this Court, arguing that the district court improperly substituted its view of the evidence for that of the magistrate.

■ Modification of child custody may be ordered only when there has been a material, substantial and permanent change of circumstances indicating to the magistrate's satisfaction that a modification would be in the best interests of the child. *Chislett v. Cox,* 102 Idaho 295, 298, 629 P.2d 691, 694 (1981); *Poesy v. Bunney,* 98 Idaho 258, 261, 561 P.2d 400, 403 (1977). When reviewing a decision rendered by the district court in its appellate capacity under I.R.C.P. 83(a), we consider the record before the magistrate independently of the district court's determination, giving due regard to the district court's analysis. *Ireland v. Ireland,* 123 Idaho 955, 958, 855 P.2d 40, 43 (1993); *McNelis v. McNelis,* 119 Idaho 349, 351, 806 P.2d 442, 444 (1991). A district court reviewing a decision of a magistrate may either conduct a trial *de novo* or conduct an appellate review on the existing record. I.R.C.P. 83(b). Where, as in this case, the district court elects to review the existing record as an appellate proceeding, it must apply the same standard of review that is applicable to our appellate review. I.R.C.P. 83(u)(1); *Winn v. Winn,* 101 Idaho 270, 272, 611 P.2d 1055, 1057 (1980).

■ Decisions regarding child custody are committed to the sound discretion of the magistrate, and the magistrate's decision may be overturned on appeal only for an abuse of discretion. *Biggers v. Biggers,* 103 Idaho 550, 555, 650 P.2d 692, 697 (1982); *Moye v. Moye,* 102 Idaho 170, 171, 627 P.2d 799, 800 (1981). An abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served by a particular custody award or modification. *Biggers, supra; Moye, supra.* Appellate courts, however, are not permitted to substitute their own view of the evidence for that of the trial court, nor to make credibility determinations. *Brammer v. Brammer,* 93 Idaho 671, 674, 471 P.2d 58, 61 (1970). Moreover, in considering findings of fact made by the trial court, the reviewing court must review the evidence in the light most favorable to the party who prevailed at trial, which in this case was JoBeth. *Higginson v. Westergard,* 100 Idaho 687, 689, 604 P.2d 51, 53 (1979); *Cozzetto v. Wisman,* 120 Idaho 721, 725, 819 P.2d 575, 579 (Ct.App. 1991). With these standards in mind, we examine the record to determine whether the magistrate's order was properly supported by the evidence.

■ Both parties remarried subsequent to the divorce. In the magistrate's findings of fact and conclusions of law, he found that Donna Pieper, (Donna), Michael's new wife, had usurped the primary and dominant role of a custodial parent over the children, disregarding the rights of JoBeth and creating stress between the parents; that this domination by Donna had generated stress and tension between the parties; that Michael and Donna were rigid and inflexible regarding time requirements for JoBeth's exercise of visitation rights; that JoBeth experienced difficulty in exercising visitation due to the restrictions imposed by Michael and Donna such as their reduction of JoBeth's visitation time if the children did not complete assigned chores on schedule. The magistrate further found that there was much hostility between the parties, particularly between Jo-Beth and Donna, and that this animosity was adversely affecting the children. The magistrate also noted that when the parties stipulated to give primary physical custody to

Michael in 1988, JoBeth was suffering from a panic disorder that has now been controlled by therapy and medication. These factors, the magistrate concluded, constituted a material and substantial change of circumstances which, in the best interest of the children, necessitated a modification of the custody arrangement. We find that substantial, although conflicting, evidence supports these findings and conclusions.

At the trial, JoBeth testified that her time with the children was limited and strictly enforced. If she was late in getting the children home, she would be punished by not being allowed as much visitation time on another occasion. JoBeth further testified that on at least one occasion she had called and requested extra time with the children from her ex-husband and was told that she could not have it because she was being "taught a lesson." Donna and Michael admitted that they limited JoBeth's dinner night visitation to the hours of 4:30 p.m. to 6:45 p.m. and that if the children did not have their chores done, JoBeth would have to wait until Michael or Donna allowed the children to leave with no additional time granted to JoBeth for the time taken away. Evidence also indicated that Donna at times interfered with the children's ability to interact with their natural mother. There was testimony that at one of Amber's gymnastic events, Donna would not allow Michael Bryan to sit with JoBeth, forcing him to stay with Donna after JoBeth arrived; that Donna told JoBeth that she was not welcome at Amber's gymnastic class because it interfered with Donna's fun time with the children; that the children had been instructed by Michael and Donna not to refer to JoBeth as "mother" in their house but to instead refer to her by her given name because they felt Donna had been a better mother to the children; and that Michael and Donna limited the children's telephone access to JoBeth and monitored their calls. Donna testified that she believed JoBeth's right to have contact with the children at events and to enroll the children in activities was limited to JoBeth's weekly dinner night. Donna also acknowledged that she considered Michael's and her priorities, plans and convenience to be always paramount to the requests or desires of JoBeth.

Relatives and friends testified that Michael Bryan was excessively concerned with being on time in returning to his father's house following visitation, and on one occasion was so anxious about being late that he was unable to eat, apparently fearing repercussions for not returning on schedule. There was also testimony that the children were increasingly aware of the hostility between the parents, which was creating stress and anxiety for the children. A witness on behalf of Michael, Dr. Gary Horton, testified that tensions between the parents were creating unhealthy conditions for the children. Upon questioning by the court, Michael admitted that the childrens' problems were probably related to hostilities between the parents.

Although there was conflicting testimony, the evidence was sufficient to support the magistrate's findings that Michael and Donna were unduly interfering with the children's access to their natural mother, leading to anxiety for the children; that Donna was inappropriately usurping the role of the natural mother; and that these and other factors were generating hostility which was detrimental to the children. Therefore, to the extent that the district court's reversal of the magistrate's decision was based upon insufficiency of evidence, the district court erred. The trier of fact is in a unique position to make determinations of credibility and to discern the import of the testimony. *Angleton v. Angleton,* 84 Idaho 184, 198, 370 P.2d 788, 796 (1962); *Knowlton v. Mudd,* 116 Idaho 262, 264, 775 P.2d 154, 156 (Ct.App.1989). An appellate court is therefore constrained to accept the findings of the trier of fact if the record discloses substantial evidence supporting those findings. Here the magistrate's findings are supported by substantial, although conflicting, evidence and are not clearly erroneous.

■ We next turn to the magistrate's conclusion that subsequent to the 1988 modification of the decree, a substantial and material change of circumstances had occurred which dictated a change of custody. The magistrate concluded that the imposition of unreasonable restrictions which interfered with Jo-

Beth's contact with the children, the usurpation of the dominant role of custodial parent by Donna in disregard of the rights and responsibilities of JoBeth, and increased stress and tension generated by Donna's domination constituted material and substantial changes of circumstances calling for a modification of the custody arrangement in the best interest of the children. On appeal, the district court concluded that these changes were not substantial enough to justify a change of custody. We, however, are convinced that the magistrate was correct in focusing upon changes in the behavior and lifestyles of the parents and children which were arguably minor, but which had a substantial adverse impact upon the children. As our Supreme Court pointed out in *Poesy v. Bunney, supra:*

> While the material, permanent and substantial change standard is a sound legal principle, care must be exercised in its application. The tendency is to search for some greatly altered circumstance in an attempt to pinpoint the change called for by the rule. Thus, the emphasis is placed on defining some change, and making that change appear, in itself, to be material, permanent and substantial. This focus is misleading. The important portion of the standard is that which relates the change in conditions to the best interest of the child. The changed circumstance standard was designed, as a matter of policy, to prevent continuous re-litigation of custody matters. That policy goal, however, is of secondary importance when compared to the best interest of the child, which is the controlling consideration in all custody proceedings. The court must look not only for changes of condition or circumstance which are material, permanent and substantial, but also must thoroughly explore the ramifications, vis-a-vis the best interest of the child, of *any* change which is evident. What may appear by itself to be a small and insignificant change in circumstances may have significant effects insofar as children are concerned.

98 Idaho at 261–62, 561 P.2d at 403–04 (citations omitted). The magistrate's conclusion that there had occurred substantial, material and permanent changes adverse to the best interests of the children was supported by substantial evidence, and the magistrate did not abuse his discretion in concluding that a modification of custody was warranted. Accordingly, the district court erred in reversing the magistrate's order modifying the divorce decree.

■ We must also address JoBeth's claim for attorney fees in the proceedings below and on appeal. Pursuant to I.C. 32–704(2), the magistrate determined that because of disparity in income between the parties, Michael should pay half of the attorney fees incurred by JoBeth in pursuing the motion to modify. The district court reversed this award, and JoBeth asserts that this reversal was improper.

An award of attorney fees pursuant to I.C. § 32–704 is discretionary, and is reversible only for an abuse of discretion. *Martsch v. Martsch*, 103 Idaho 142, 148, 645 P.2d 882, 888 (1982); *Desfosses v. Desfosses*, 120 Idaho 354, 362, 815 P.2d 1094, 1102 (Ct.App.1991); *Cf. Beesley v. Beesley*, 114 Idaho 536, 543, 758 P.2d 695, 702 (1988).

The record in this case reflects that at the time of the trial Michael had greater resources than did JoBeth. He earned in excess of $37,000 per year while JoBeth earned only about $12,000 per year. This disparity in income is sufficient to support the magistrate's conclusion that Michael should pay a share of JoBeth's attorney fees under I.C. § 32–704. There was no abuse of discretion by the magistrate in awarding these fees. Therefore, the magistrate's award must be reinstated.

In addition, JoBeth requests attorney fees on the present appeal pursuant to I.C. § 32–704. The parties' respective financial positions, as they bear upon a Section 32–704(2) attorney fee request, may have changed since the trial was conducted in 1991. As an appellate court, we are not in a position to make the factual determinations requisite for an attorney fee award under that statute. However, on remand the magistrate is authorized to determine whether attorney fees for this appeal should be granted to JoBeth under the criteria of I.C. §§ 32–704 and 32–705. *See Brazier v. Brazier,* 111 Idaho 692, 701,

726 P.2d 1143, 1152 (Ct.App.1986) *overruled on other grounds by Swope v. Swope,* 112 Idaho 974, 739 P.2d 273 (1987); *Donndelinger v. Donndelinger,* 107 Idaho 431, 440, 690 P.2d 366, 375 (Ct.App.1984).

In summary, the appellate decision of the district court is reversed. The magistrate's order for modification of the child custody and child support terms of the divorce decree and the magistrate's award of attorney fees is affirmed. On remand the magistrate shall consider JoBeth's application for attorney fees incurred on this appeal. Costs to appellant pursuant to I.A.R. 40.

WALTERS, C.J., and PERRY, J., concur.